IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SONIA JOHNSON and JOHN ADENIRAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2029 |
| | § | |
| BANK OF AMERICA, N.A. and | § | |
| FEDERAL NATIONAL MORTGAGE | § | |
| ASSOCIATION a/k/a FANNIE MAE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sonia Johnson and John Adeniran ("Plaintiffs") brought this action in the 334th Judicial District Court of Harris County, Texas, where it was filed under Cause No. 2013-38746. Defendant Bank of America, N.A. ("BANA") timely removed.[1] Pending before the court are the following: Plaintiffs' Motion and Notice—for Leave to File Amended Pleading Under Fed. R. Civ. P. 15(a)(2) ("First Motion for Leave to Amend") (Docket Entry No. 14); Lender Defendants' Motion for Summary Judgment ("Motion for Summary Judgment") (Docket Entry No. 16); Lender Defendants' Reply and Objection to Plaintiffs' Evidence (Docket Entry No. 21);

---

[1]Defendants Nathan Sanchez, Rex Kesler, Thomas Reder, and Barrett Daffin Frappier Turner & Engel, LLP consented to the removal. Consent to Removal, Exhibit C to Notice of Removal, Docket Entry No. 1-3. Plaintiffs' claims against these defendants were dismissed for failure to state a claim on August 7, 2013. See Order, Docket Entry No. 9.

and Plaintiffs' Motion and Notice—for Leave to File Amended Pleading Under Fed. R. Civ. P. 15(a)(2) ("Second Motion for Leave to Amend") (Docket Entry No. 23).

For the reasons explained below, Plaintiffs' First Motion for Leave to Amend will be granted, Defendants' Motion for Summary Judgment will be granted, and Plaintiffs' Second Motion for Leave to Amend will be denied. Defendants' Objection to Plaintiffs' Evidence is moot as the court has not relied on the challenged evidence in reaching its decision.

## I. **Background**

In September of 2007 plaintiff John Adeniran financed the purchase of a home in Harris County, Texas, with a loan from Defendant BANA.[2]  The loan was evidenced by a promissory note in favor of BANA (the "Note"),[3] and it was secured by a deed of trust on the property (the "Deed of Trust"), which named BANA as the "Lender" and the beneficiary.[4]

---

[2]Plaintiffs' Original Petition and Application for Ex-Parte Temporary Restraining Order and Temporary Injunction to Halt Substitute Trustee Foreclosure Sale ("Original Petition"), Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 7; see also Special Warranty Deed With Third Party Vendor's Lien, Exhibit B to Plaintiff's First Amended Complaint, attached to Plaintiff's First Motion for Leave to Amend, Docket Entry No. 14-3.

[3]Note, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 16-2.

[4]Deed of Trust, Exhibit A-2 to Motion for Summary Judgment, Docket No. 16-3.

Adeniran eventually fell behind on his payments.   His last payment was made on May 10, 2010, covering his obligations through March 1, 2009.[5]  On April 15, 2011, Adeniran's loan servicer, BAC Home Loan Servicing, LP ("BAC"), notified Adeniran by mail that he was in default on his loan and provided him an opportunity to cure the default on or before May 15, 2011.[6]  The letter stated that if Adeniran did not cure the default by the specified date, his mortgage payments would be accelerated and foreclosure proceedings would be initiated.

On June 6, 2011, BANA assigned "all rights accrued and to accrue" under the "loan agreement evidenced by a promissory note and security instrument or deed of trust . . . made or granted by JOHN ADENIRAN" to BAC.[7]  The assignment was signed by Stephen C. Porter for BANA, and it was recorded with the Harris County Clerk on June 10, 2011.   BAC merged with BANA three weeks later.[8]

---

[5]Declaration of Jessica L. Valdez, Exhibit A to Motion for Summary Judgment, Docket Entry No. 16-1, p. 4 ¶ 10; see also Loan History Statement, Exhibit A-3 to Motion for Summary Judgment, Docket Entry No. 16-4, p. 5.

[6]Letter from BAC Home Loans Servicing, LP, to John Adeniran (April 15, 2011), Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 16-7, p. 1.

[7]Assignment of Deed of Trust, Exhibit A-8 to Motion for Summary Judgment, Docket Entry No. 16-9.

[8]Plaintiff's First Amended Complaint ("First Amended Complaint"), Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, p. 10 ¶ 32.

On September 24, 2012, Adeniran transferred the property to plaintiff Sonia Johnson, as trustee of the Birch Arbor Court Trust, by warranty deed.[9]

On May 23, 2013, counsel to BANA, successor by merger to BAC, sent Adeniran a Notice of Acceleration and Notice of Trustee's Sale.[10]

Adeniran and Johnson filed an Original Petition in the District Court of Harris County, Texas, 334th Judicial District, on July 1, 2013, naming BANA, the trustees, and BANA's legal counsel as defendants.[11] Plaintiffs sought and obtained a temporary restraining order halting the sale.[12] On July 10, 2013, Defendants removed the action to federal court on the basis of diversity jurisdiction.[13]

## II.   **Plaintiffs' Motions for Leave to Amend**

Plaintiffs' original state court petition sought injunctive relief based on alleged violations of the Texas Property Code.[14]

---

[9]Warranty Deed, Exhibit D to First Amended Complaint, Docket Entry No. 14-5.

[10]Notice of Acceleration, Exhibit A-7 to Motion for Summary Judgment, Docket Entry No. 16-8.

[11]Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, pp. 5-12.

[12]Id. at 1-4.

[13]Notice of Removal, Docket Entry No. 1.

[14]Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, pp. 5-12.

After removal, a docket control order was entered on November 1, 2013, setting January 10, 2014, as the deadline for motions to amend the pleadings.[15]

On January 13, 2014, Plaintiffs filed their First Motion for Leave to Amend.[16]  Plaintiffs attached their proposed First Amended Complaint, which added Federal National Mortgage Association ("Fannie Mae") as a defendant and asserted four additional causes of action.[17]  Defendants responded in opposition to the First Motion for Leave to Amend on February 3, 2014,[18] and moved for summary judgment on February 5, 2014.[19]  Defendants' Motion for Summary Judgment addressed Plaintiffs' First Amended Complaint.[20]

On March 5, 2014, Plaintiffs responded to Defendants' Motion for Summary Judgment.[21]  On August 28, 2014, nearly six months later, Plaintiffs moved for leave to file a second amended complaint.[22]  Plaintiffs seek to add two additional causes of action

---

[15]Docket Control Order, Docket Entry No. 13, p. 1.

[16]First Motion for Leave to Amend, Docket Entry No. 14.

[17]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1.

[18]Bank of America's Response to Plaintiffs' Motion for Leave to File First Amended Complaint, Docket Entry No. 15.

[19]Motion for Summary Judgment, Docket Entry No. 16.

[20]Id. at 12 ¶ 10.

[21]Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (Docket #16) ("Response to Motion for Summary Judgment"), Docket Entry No. 18.

[22]Second Motion for Leave to Amend, Docket Entry No. 23.

not pleaded in their First Amended Complaint.   Defendants have opposed Plaintiffs' second motion.[23]

## A.   Standard of Review

Rule 16(b) governs the amendment of pleadings after a scheduling order deadline has expired.   <u>S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA</u>, 315 F.3d 533, 536 (5th Cir. 2003). Rule 16(b)(4) allows modification of the scheduling order only for good cause and with the judge's consent.   "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."   <u>S&W Enters.</u>, 315 F.3d at 536. Good cause is satisfied upon a showing of the movant's inability to meet the court's deadlines "despite the diligence of the party needing the extension."   <u>Id.</u> at 535 (quoting 6A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 1522.1 (2d ed. 1990)).

In deciding whether the amendment is proper, a court must consider "(1) the explanation for the failure to [timely move for leave to amend];   (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice."   <u>S&W Enters.</u>, 315 F.3d at 536 (alterations in original) (internal

---

[23]Lender Defendants' Opposition to Plaintiffs' Motion for Leave to Amend ("Opposition to Second Motion to Amend"), Docket Entry No. 24.

quotation marks omitted) (quoting <u>Reliance Ins. Co. v. La. Land &</u>
<u>Exploration Co.</u>, 110 F.3d 253, 257 (5th Cir. 1997) (applying
Rule 16(b) to the supplementation of an expert report)).   The
movant bears the burden of demonstrating that he is entitled to the
opportunity to amend.   <u>See id.</u>

**B.    Plaintiffs' First Motion for Leave to Amend**

Plaintiffs filed their First Motion for Leave to Amend three
days after the expiration of the deadline set in the Docket Control
Order.  Plaintiffs offered no explanation for their failure to meet
the  court's  deadline.    However,  the  importance  of  adding
substantive causes of action to Plaintiffs' state court petition is
clear.   Moreover, Defendants would not be prejudiced since they
have  fully  addressed  the  amended  complaint  in  their  motion  for
summary judgment.  Plaintiffs' First Motion for Leave to Amend will
therefore be granted.

**C.    Plaintiffs' Second Motion for Leave to Amend**

Plaintiffs filed their Second Motion for Leave to Amend nearly
eight months after the scheduling order deadline and seven months
after  the  filing  of  Defendants'  Motion  for  Summary  Judgment.
Plaintiffs argue that they should be allowed leave to amend because
they have "discovered new causes of action" that "became apparent
from documents and information produced by Defendant during the
Discovery process."[24]  However, Plaintiffs' new causes of action are

_____

[24]Second Motion for Leave to Amend, Docket Entry No. 23, p. 6
¶ 10.

premised entirely on evidence contained in an exhibit to Defendants' Motion for Summary Judgment.[25] Defendants state that "not once have Plaintiffs sought any discovery from Lender Defendants."[26] Furthermore, Plaintiffs cited the same exhibit in their March 4 response to Defendants' Motion for Summary Judgment.[27]

Plaintiffs argue that the proposed amendments are important "because they [] are additional avenues for Plaintiff to achieve her desired results of this litigation based on the Defendants' mis-conduct."[28] Defendants counter that Plaintiffs "simply want to avoid summary judgment."[29] The court is mindful that "[a] party should not be allowed to amend its complaint, after months of undue delay, for the sole purpose of pleading around an adverse summary judgment disposition." Christopher v. Mobil Oil Corp., 149 F.R.D. 539, 546 (E.D. Tex. 1993).

Plaintiffs argue that Defendants would not be prejudiced by an amendment, "given a potential trial setting is still several months away, and if there is prejudice it may be cured with a

_____

[25]See Second Amended Complaint, Exhibit 1 to Second Motion for Leave to Amend, Docket Entry No. 23-1, pp. 24-30.

[26]Opposition to Second Motion to Amend, Docket Entry No. 24, p. 4 ¶ 7.

[27]See Response to Motion for Summary Judgment, Docket Entry No. 18, p. 11 ¶ 16, pp. 35-36 ¶ 72, p. 44 ¶ 93.

[28]Second Motion for Leave to Amend, Docket Entry No. 23, p. 6 ¶ 10.

[29]Opposition to Second Motion to Amend, Docket Entry No. 24, p. 3 ¶ 4.

continuance."[30]  Defendants respond that if Plaintiffs are allowed to amend, Defendants would have to prepare a new round of dispositive motion briefing, duplicating efforts and wasting judicial resources.[31]

This case has been on file for over a year, and the deadlines for discovery and dispositive motions have long since passed. Although a continuance to allow for a "do-over" is possible, the better result is to move the case expeditiously toward a resolution.  Plaintiffs' Second Motion for Leave to Amend will therefore be denied.

### III.  Defendants' Motion for Summary Judgment

Plaintiffs' First Amended Complaint alleges that Defendants lack standing to foreclose.  Building on this central allegation Plaintiffs assert causes of action for breach of contract, quiet title, violation of notice requirements under the Texas Property Code, violation of the Truth in Lending Act, and tortious interference with a contractual relationship.  Plaintiffs also seek declaratory relief.  Defendants have moved for summary judgment on all of Plaintiffs' claims.

### A.   Standard of Review

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant

---

[30]Second Motion for Leave to Amend, Docket Entry No. 23, p. 7, ¶ 12.

[31]Opposition to Second Motion to Amend, Docket Entry No. 24, p. 4 ¶ 8.

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
Disputes about material facts are genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510
(1986).  The moving party is entitled to judgment as a matter of
law if "the nonmoving party has failed to make a sufficient showing
on an essential element of her case with respect to which she has
the burden of proof."  Celotex Corp. v. Catrett, 106 S. Ct. 2548,
2552 (1986).

A party moving for summary judgment "must 'demonstrate the
absence of a genuine issue of material fact,' but need not negate
the elements of the nonmovant's case."  Little v. Liquid Air Corp.,
37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting
Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet
this initial burden, the motion must be denied, regardless of the
nonmovant's response."  Id.  If, however, the moving party meets
this burden, "the nonmovant must go beyond the pleadings" and
produce evidence that specific facts exist over which there is a
genuine issue for trial.  Id. (citing Celotex, 106 S. Ct. at
2553-54).  The nonmovant "must do more than simply show that there
is some metaphysical doubt as to the material facts."  Matsushita
Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356
(1986).

In reviewing the evidence "the court must draw all reasonable
inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence." <u>Reeves v.</u>
<u>Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2110 (2000).
Factual controversies are to be resolved in favor of the nonmovant,
"but only when there is an actual controversy, that is, when both
parties have submitted evidence of contradictory facts." <u>Little</u>,
37 F.3d at 1075.

**B.    Standing to Foreclose Under the Texas Property Code and the
Deed of Trust**

Under the Texas Property Code a non-judicial foreclosure may
be initiated by the current "mortgagee" or a "mortgage servicer"
acting on behalf of the mortgagee. <u>Farkas v. GMAC Mortg., L.L.C.</u>,
737 F.3d 338, 342 (5th Cir. 2013); <u>see</u> Tex. Prop. Code §§ 51.002,
51.0025. "Mortgagee" is a defined term that includes "the grantee,
beneficiary, owner, or holder of a security instrument" as well as
"the last person to whom the security interest has been assigned of
record." Section 51.0001. "Mortgage servicer" means the last
person to whom a mortgagor has been instructed by the current
mortgagee to send payments for the debt secured by a security
instrument. <u>Id.</u> A mortgagee may be its own mortgage servicer.
<u>Id.</u>

Plaintiffs argue that BANA, as successor by merger to BAC,
lacks standing to foreclose because (1) the assignment from BANA to
BAC is defective since BANA previously sold the loan to Fannie Mae,
breaking the chain of title; (2) even if the chain of title is
complete, the assignment from BANA to BAC is void; and (3) even if

-11-

the assignment is not void, Defendants lack authority to foreclose under the terms of the deed of trust.

Plaintiffs rely primarily on an August 15, 2011, letter to Adeniran in which BAC stated that it was acting as mortgage servicer to Fannie Mae, "the Owner and/or Mortgagee of the Note and Deed of Trust."[32] However, Defendants' Notice of Acceleration, sent on May 23, 2013, stated that BANA, as successor to BAC, was acting as mortgage servicer to BANA, "the Mortgagee of the Note and Deed of Trust."[33]

There is no genuine dispute that BAC was Adeniran's mortgage servicer. Therefore, BANA, as successor by merger to BAC, had authority to foreclose if either (1) it is acting on behalf of a mortgagee pursuant to a mortgage servicing agreement or (2) it is itself a mortgagee. BANA was the original grantee and beneficiary of the Deed of Trust and the original holder of the Note.[34] BANA has produced a facially valid assignment from BANA to BAC, purporting to transfer all beneficial interest under the Deed of Trust and Note to BAC.[35] BANA has also produced a copy of the Note,

---

[32]Letter from BAC to John Adeniran, Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 16-7.

[33]Notice of Acceleration, Exhibit A-7 to Motion for Summary Judgment, Docket Entry No. 16-8, p. 1.

[34]Deed of Trust, Exhibit A-2 to Motion for Summary Judgment, Docket No. 16-3; Note, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 16-2.

[35]Assignment of Deed of Trust, Exhibit A-8 to Motion for Summary Judgment, Docket Entry No. 16-9.

endorsed in blank by BANA.[36]  BANA, as successor to BAC, therefore had authority to foreclose as servicer and as a "mortgagee" because BAC is "the last person to whom the security interest has been assigned of record."

      1.   <u>The summary judgment evidence reflects an unbroken chain of title.</u>

Plaintiffs argue that the assignment from BANA to BAC was defective because "BANA had no interests in the Note and Deed of Trust to convey." Plaintiffs cite <u>Miller v. Homecomings Financial, LLC</u>, 881 F. Supp. 2d 825 (S.D. Tex. 2012), for the proposition that absent a complete chain of title, a foreclosing party lacks standing to foreclose under the Texas Property Code and the deed of trust. <u>See id.</u> at 830-31 ("When a party seeking to foreclose fails to show an unbroken chain of title, then the homeowner may be entitled to an injunction against the threatened foreclosure."). Whether or not <u>Miller</u> is a correct statement of Texas law, <u>see Munoz v. HSBC Bank USA, N.A.</u>, No. H-12-0894, 2013 WL 265982, at *9-*12 (S.D. Tex. Jan. 22, 2013) (questioning <u>Miller</u>'s conclusions), it is inapposite where, as in this case, the chain of title is unbroken, <u>e.g.</u>, <u>Jemison v. CitiMortgage, Inc.</u>, No. H-13-2475, 2014 WL 2739351, at *4 (S.D. Tex. June 17, 2014).

Plaintiffs allege that Plaintiffs' loan was sold to Fannie Mae prior to the assignment from BANA to BAC, and after that date "BOA

---

[36]Note, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 16-2.

never held the note or the deed of trust since Fannie Mae claims to hold those rights."[37]   Plaintiffs argue that the assignment from BANA to BAC was therefore void because "BANA had no[] interests in the Note and Deed of Trust to convey."   Plaintiffs concede, however, that "there are no documents showing the transfer of [the Note or Deed of Trust] to Fannie Mae."[38]  The only assignment of the Note or Deed of Trust in the record is the June 2011 assignment from BANA to BAC.   Thus, Plaintiffs' assertion that "Defendants have produced no documents that show any transfers of the Note and Deed of Trust from Fannie Mae [back to BANA]"[39] is irrelevant.

Because "[r]eal property records often contain transfers taking place many years in the past . . . Texas 'view[s] with suspicion and distrust attempts to discredit certificates of acknowledgment,' under which the transfer is presumptively valid and contradicting evidence 'must be clear, cogent, and convincing beyond reasonable controversy.'"  Morlock, L.L.C. v. JP Morgan Chase Bank, N.A., No. 12-20623, 2013 WL 2422778, at *2 (quoting Ruiz v. Stewart Mineral Corp., 202 S.W.3d 242, 248 (Tex. App.—Tyler 2006, pet. denied)).   Plaintiffs have not met this burden.

---

[37]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, p. 9 ¶ 31.

[38]Response to Motion for Summary Judgment, Docket Entry No. 18, p. 26 ¶ 50; see also id. ¶ 51 ("[T]here is no evidence that the loan or supporting documents were ever transferred to Fannie Mae.").

[39]Id. at 26 ¶ 50.

The summary judgment evidence shows that the chain of title of the Deed of Trust between the original lender, BANA, and the party seeking to foreclose (BANA, as successor by merger to BAC) is unbroken and without gaps.  Adeniran executed the note and deed of trust on September 26, 2007, naming BANA as the holder of the note and the beneficiary of the deed of trust.[40]  On June 6, 2011, BANA assigned "all rights accrued and to accrue" under the "loan agreement evidenced by a promissory note and security instrument or deed of trust" to BAC.[41]  Four days later the assignment was recorded with the Harris County Clerk. [42]  On July 1, 2011, BAC merged with BANA.[43]  As the last party to whom the security interest has been assigned of record, BANA, as successor by merger to BAC, has standing to foreclose under the Texas Property Code.

Plaintiffs argue that Defendants must hold or own the note as well as the Deed of Trust to foreclose.[44]  While Defendants have established chain of title in the Deed of Trust, there is some indication in the record that Fannie Mae has an interest in the

---

[40]Note, Exhibit A-1 to Motion for Summary Judgment, Docket Entry No. 16-2; Deed of Trust, Exhibit A-2 to Motion for Summary Judgment, Docket Entry No. 16-3.

[41]Assignment of Deed of Trust, Exhibit A-8 to Motion for Summary Judgment, Docket Entry No. 16-9.

[42]Id.

[43]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, p. 10 ¶ 32.

[44]Response to Motion for Summary Judgment, Docket Entry No. 18, pp. 19-24 ¶¶ 37-47.

-15-

Note.[45]  Additionally, while BANA has produced a copy of the note, endorsed in blank, it has not claimed to hold or own it.  Viewing the evidence in the light most favorable to the Plaintiffs, i.e., assuming that Fannie Mae holds or owns the note, BANA's assignment to BAC would only have transferred the Deed of Trust.  See, e.g., Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 730 (5th Cir. 2010) ("[A]n assignee takes all of the rights of the assignor, no greater and no less.") (internal quotation marks and citation omitted).

Defendants argue that they need not hold or own the note to foreclose, only the deed of trust.[46]  The Fifth Circuit has held that the so-called "split-the-note" theory is "inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned.  The party to foreclose need not possess the note itself." Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 255 (5th Cir. 2013).

Plaintiffs respond that Martins should not apply unless the party seeking to foreclose is acting as a mortgage servicer on

---

[45]The "Bank of America Servicing Notes" for Adeniran's loan identify the "investor" as "FNMA."  Exhibit A-4 to Motion for Summary Judgment, Docket Entry No. 16-5, p. 4.  Also, the April 11, 2011, notice of default from BAC to Adeniran states that BAC is acting as the mortgage servicer for FNMA, "which is the Owner and/or Mortgagee of the Note and Deed of Trust associated with your real estate loan."  Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 16-7, p. 2.

[46]Motion for Summary Judgment, Docket Entry No. 16, pp. 17–18 ¶¶ 23–25, pp. 20–22 ¶¶ 29–33.

behalf of a mortgagee who holds the note or who is in privity with the owner or holder of the note.[47]   How else, Plaintiffs argue, would the mortgagee have authority to direct payments to the mortgage servicer.[48]   This argument has some force, but the court finds no such limitation in the controlling case law.[49]

In <u>Martins</u> the plaintiff was a mortgagor under a deed of trust that identified MERS as the beneficiary.[50]   <u>Id.</u> at 252.   After the plaintiff defaulted MERS assigned the deed of trust to the mortgage servicer, who initiated foreclosure.   <u>Id.</u>   The plaintiff argued that because MERS assigned only the deed of trust, and not the note, the mortgage servicer lacked standing to foreclose.   <u>Id.</u>   The Fifth Circuit held that neither MERS nor the mortgage servicer needed to possess the note to foreclose.[51]   <u>Id.</u> at 255.   BANA, as

---

[47]Response to Motion for Summary Judgment, Docket Entry No. 18, pp. 23-24 ¶ 44 & n.1.

[48]<u>Id.</u>

[49]Plaintiffs also rely on Justice Graves' concurring opinion in <u>Reinagel v. Deutsche Bank Nat. Trust Co.</u>, 735 F.3d 220, 229-30 (5th Cir. 2013), for the proposition that the assignee of the deed of trust must also hold the promissory note to foreclose.   As the Fifth Circuit has observed, "[t]he language in that one-judge opinion, concurring in the majority's judgment but disagreeing with some of its reasoning, is not binding."   <u>Rust v. Bank of America, N.A.</u>, No. 13-50961, 2014 WL 2726841, at *3 (June 17, 2014).

[50]For background on MERS and its role in foreclosure cases, see <u>Svoboda v. Bank of America, N.A.</u>, 964 F. Supp. 2d 659, 665-66 (W.D. Tex. 2013).

[51]While the explicit holding of <u>Martins</u> refers only to a "mortgage servicer," its conclusion is based on the fact that the (continued...)

successor to BAC, is the current "mortgagee."  It therefore has standing to foreclose under the Texas Property Code, and it need not show that it holds or owns the Note.

> 2.   <u>Plaintiffs lack standing to challenge the assignment as voidable, and they have presented no evidence that the assignment was void.</u>

Plaintiffs allege that the assignment from BANA to BAC is "wholly fraudulent and ineffective and void" for three reasons: (1) the signer, Stephen C. Porter, was attorney in fact for both parties, and he lacked authorization from either party to play both roles in the transaction; (2) Porter's signature was not actually made by Porter or by a person with Porter's authority; and (3) Porter never appeared personally before the notary as stated in the assignment.[52]

For the reasons explained in several prior opinions of this court, Plaintiffs lack standing to challenge the validity of the assignment based on the assignor's alleged lack of authority.  See <u>Van Duzer v. U.S. Bank Nat. Ass'n</u>, 995 F. Supp. 2d 673, 689 (S.D. Tex. Jan. 31, 2014), <u>aff'd per curiam</u>, No. 14-20122, 2014

---

[51](...continued)
mortgage servicer, as assignee of the deed of trust, was a "mortgagee."  <u>See</u> <u>Martins</u>, 722 F.3d at 255; <u>Epstein v. US Bank National Association</u>, 540 F. App'x 354, 357 (5th Cir. 2013) (substituting "[mortgagee]" for "mortgage servicer" when quoting the holding of <u>Martins</u>); <u>Wiley v. Deutsche Bank Nat. Trust Co.</u>, 539 F. App'x 533, 536 (5th Cir. 2013) (same).

[52]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, p. 9 ¶ 31.

WL 4416304 (5th Cir. Sept. 9, 2014); <u>Felder v. Countrywide Home Loans</u>, No. H-13-0282, 2013 WL 6805843, at *18-*19 (S.D. Tex. Dec. 20, 2013); <u>Morlock, L.L.C. v. JPMorgan Chase Bank, N.A.</u>, No. H-13-0734, 2013 WL 5781240, at *13 (S.D. Tex. Oct. 25, 2013).

Furthermore, while Plaintiffs would have standing to challenge the assignment on any ground that renders the assignment void, as opposed to merely voidable, <u>Reinagel</u>, 735 F.3d at 225, they have presented no evidence to support their assertion that the assignment was void as a forgery or otherwise. As such, Plaintiffs' challenges to the assignment fail as a matter of law.

    3.   <u>BANA has standing to foreclose under the Deed of Trust.</u>

Plaintiffs argue that neither BANA nor BAC has standing to foreclose under the Deed of Trust because neither party can prove that it is the "Lender" as defined in that document.[53] Courts in this district have rejected identical arguments by other plaintiffs. <u>See Jones v. Resource Lending Grp.</u>, No. 3:14-cv-0027, slip op. at 5 (S.D. Tex. Aug. 13, 2014); <u>Jemison v. Citimortgage, Inc.</u>, No. H-13-2475, 2014 WL 2739351, at *9 (S.D. Tex. June 17, 2014).

Absent a clause limiting assignment, a deed of trust specifying that rights inure to the "successors and assigns" of the lender is assignable, and a subsequent assignee may assert the

---

[53]<u>Id.</u> at 11 ¶ 38; Response to Motion for Summary Judgment, Docket Entry No. 18, pp. 30-31 ¶ 61.

rights of the lender-assignor.  <u>Crowell v. Bexar County</u>, 351 S.W.3d 114, 117-18 (Tex. App.—San Antonio 2011, no pet.).  Here, while the Deed of Trust only gives the power of sale to the "Lender,"[54] defined as "Bank of America, N.A.,"[55] it specifies that "[t]he covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender."[56]  As a valid assignee, BAC had authority to foreclose under the Deed of Trust.[57]

## C.  Breach of Contract

To prevail on a breach of contract claim under Texas law a plaintiff must prove:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach.  <u>Lewis v. Bank of America, NA</u>, 343 F.3d 540, 544-45 (5th Cir. 2003) (citing <u>Palmer v. Espey Huston & Assocs.</u>, 84 S.W.3d 345, 353 (Tex. App.—Corpus Christi

---

[54]Deed of Trust, Exhibit A-2 to Motion for Summary Judgment, Docket Entry No. 16-3, p. 14 ¶ 21.

[55]<u>Id.</u> at 1.

[56]<u>Id.</u> at 11 ¶ 18.

[57]Plaintiffs also argue that under the Deed of Trust Defendants must hold the note to foreclose.  Plaintiffs have pointed to no provision supporting this argument.  <u>See</u> <u>Rust</u>, 2014 WL 2726841, at *3 (affirming summary judgment for defendants where "[t]he deed of trust was in the summary judgment record and [plaintiff] point[ed] to no provision in it that requires Bank of America to be the holder of the note to enforce the deed of trust").

2002, pet. denied)). "A party to a contract may not bring a suit for the contract's breach if that party, itself, is in default." Ybarra v. Wells Fargo Bank, N.A., No. 13-50881, 2014 WL 3562759, at *2 (5th Cir. July 21, 2014) (citing Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990)).

Plaintiffs allege that Defendants "breached the terms of the Deed of Trust by (1) attempting transfers of the Note and Deed of Trust when Defendants did not maintain the status of Lender or Note-holder, (2) recording an Assignment in the Harris County Real Property Records that claims the transfer was made for value when no such consideration was made, and (3) making numerous transfers which did not include the Note together with the Deed of Trust."[58] Defendants argue that Adeniran cannot maintain a breach of contract action because he defaulted on his payment obligations and that Johnson lacks standing to sue because she was not a party to the Deed of Trust or the Note.[59]

It is undisputed that Adeniran defaulted on his loan.[60] However, citing Mathis v. DCR Mortg. III Sub, I, LLC, 952 F. Supp. 2d 828, 837 (W.D. Tex. 2013), Plaintiffs argue that by attempting to foreclose under the Deed of Trust, Defendants elected

---

[58]Response to Motion for Summary Judgment, Docket Entry No. 18, pp. 15-16 ¶ 25.

[59]Motion for Summary Judgment, Docket Entry No. 16, pp. 13-14 ¶¶ 14-16.

[60]Id. at 27 ¶ 50; see Response to Motion for Summary Judgment, Docket Entry No. 18, p. 44 ¶ 93 (not disputing this fact).

to treat the contract as continuing after the breach and are obligated to perform fully.[61]

Mathis is distinguishable, however, because the duties allegedly breached by Defendants were not triggered by Plaintiffs' default.  The court in Mathis held that a homeowner's default did not excuse the defendant from providing proper notice of acceleration.  Id.  The court reasoned that "[t]o hold the very act which triggers the contractual obligation amounts to a breach excusing performance of said obligation would render the notice provision a dead letter."  Id.  Here, the allegations in Plaintiffs' First Amended Complaint all pertain to transfers of the Note and Deed of Trust, not to procedural obligations triggered by Plaintiffs' default.

Moreover, even if Plaintiffs' claims were based on alleged defects in the foreclosure process, Plaintiffs have not proven any damages as a result of those defects.  There is no evidence in the record that a foreclosure sale ever took place, and Plaintiffs appear to have retained possession of the property since Adeniran last made a payment in 2010.

As another court in this district recently observed, "Mathis did not undermine the general rule that a party must perform or tender performance under the contract before asserting a claim for breach."  Jemison, 2014 WL 2739351 at *9.  "Because [the plaintiff]

---

[61]Response to Motion for Summary Judgment, Docket Entry No. 18, p. 16 ¶¶ 26-27.

did not make the contractually required payments, he did not perform and his breach of contract claim fails as a matter of law." Id.

Plaintiffs' breach of contract claims also fail for other reasons. First, assuming for the sake of argument that defendants were required to "maintain the status of Lender or Note-holder" to transfer the note or deed of trust, Plaintiffs have presented no evidence that any of the defendants breached this duty. BANA, the original "Lender" and "Note-holder," is the only defendant shown to have made a transfer. Second, Plaintiffs have failed to identify a provision of the Deed of Trust allegedly breached by the Defendants' recording of the Assignment with the Harris County Clerk. Third, while Plaintiffs argue that the Deed of Trust requires that the Note and Deed of Trust be transferred together, the instruments themselves do not support that argument. Section 20 of the Deed of Trust indicates that the Note and the Security Instrument <u>can</u> be sold together, not that they <u>must</u> be sold together.[62] See <u>Jemison</u>, 2014 WL 2739351 at *9 (reaching the same conclusion based on identical language). Fourth, and most importantly, Plaintiffs have not shown damages resulting from any of the alleged breaches.

---

[62]<u>See</u> Deed of Trust, Exhibit A-2 to Motion for Summary Judgment, Docket Entry No. 16-3, p. 12 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.").

Since Plaintiffs have failed to raise a genuine issue of material fact as to any of their breach of contract claims, the court need not address whether Johnson, who is not a party to either the Deed of Trust or the Note, has standing to enforce the terms of the contract.

**D.    Quiet Title**

"[T]he goal of a suit to quiet title is to clear title to property from clouds or encumbrances." In re Puig, 351 S.W.3d 301, 305 (Tex. 2011) (citing Thomson v. Locke, 1 S.W. 112, 115 (1886)). "In a Texas quiet title action, '[t]he plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on title that equity will remove.'" Morlock, L.L.C. v. Bank of New York Mellon Trust Company, N.A., No. 12-20832, 2013 WL 3971517, at *1 (5th Cir. Aug. 5, 2013) (quoting Essex Crane Rental Corp. v. Carter, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)). "A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." Fricks v. Hancock, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

A suit to quiet title under Texas law requires a plaintiff to prove:   (1) a valid equitable interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) although facially valid, defendant's claim is invalid or

-24-

unenforceable.  <u>Bryant v. Bank of America, N.A.</u>, No. 4:11-CV-448, 2012 WL 2681361, at *16 (E.D. Tex. June 6, 2012) (citing <u>Sadler v. Duvall</u>, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, pet. denied)).  "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." <u>Gordon v. West Houston Trees, Ltd.</u>, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

For reasons discussed in Section III.B above, plaintiffs have not presented sufficient evidence to create a genuine issue of fact concerning the validity of BANA's claim against the subject property.  Because BANA "did not lack authority to foreclose and [its] claim is not otherwise invalid, unenforceable, or unlawful," Plaintiffs' quite title claim fails as a matter of law.  <u>See Morlock, L.L.C. v. JP Morgan Chase Bank, N.A.</u>, No. 13-20602, 2014 WL 4652902, at *2 (5th Cir. Sept. 19, 2014).

**E.   Tortious Interference with Contract**

"Tortious interference with a contract occurs when a person intentionally and improperly interferes with the performance of a contract with a third party." <u>Mackey v. U.P. Enterprises, Inc.</u>, 935 S.W.2d 446, 458 (Tex. App.—Tyler 1996, no writ).  "A tortious interference cause of action is established if the plaintiff proves:  (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage

-25-

or loss resulted." <u>Friendswood Dev. Co. v. McDade & Co.</u>, 926 S.W.2d 280, 282 (Tex. 1996). Under Texas law "a party cannot tortiously interfere with its own contract," because "a person must be a stranger to a contract to tortiously interfere with it." <u>In re Vesta Ins. Grp., Inc.</u>, 192 S.W.3d 759, 761 (Tex. 2006) (internal quotation marks and citation omitted).

Plaintiffs allege that "[a]ll defendants have committed and continue to commit willful and intentional acts of interference with the Deed of Trust, specifically but not limited to interfering with Plaintiff's contractual relationship with the true 'Lender' (if any) under the Deed of Trust by asserting rights under the Deed of Trust which have not been validly a[c]quired."[63]

The only party asserting rights under the Deed of Trust is BANA, as successor to BAC, who seeks to exercise the power of sale. As a valid assignee of the Deed of Trust, BAC acquired the power of sale, and as successor to BAC, BANA is a party to the contract and cannot tortiously interfere with it. Defendants are entitled to summary judgment on this claim.[64]

---

[63]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, pp. 18-19 ¶ 85.

[64]In their Response to Defendants' Motion for Summary Judgment, Plaintiffs allege that "securitization of Plaintiffs' Note and Deed of Trust resulted in a third party and stranger (identified as investor) to the Note and Deed of Trust dictating whether Plaintiffs['] offer for a short sale was approved." Docket Entry No. 18, p. 38 ¶ 80. Plaintiffs refer to an entry in their loan service records that states "SS declined 3/28/13, investor denied,

(continued...)

**F.    Violation of the Texas Property Code**

Plaintiffs allege that BANA's appointment of a substitute trustee and notice of sale did not comply with the requirements of Chapter 51 of the Texas Property Code.[65]   Defendants argue that Plaintiffs' claim fails because no foreclosure sale took place and Plaintiffs were not harmed as a result of any alleged defects.[66]

Defective notice may provide grounds for a wrongful foreclosure action, assuming the property is sold, but Texas does not recognize a cause of action for attempted wrongful foreclosure. James v. Wells Fargo Bank, N.A., 533 F. App'x 444, 446–47 (5th Cir. 2013) (citing Peterson v. Black, 980 S.W.2d 818, 823 (Tex.

---

[64](...continued)
offer too low."  Exhibit A-4 to Motion for Summary Judgment, Docket Entry No. 16-5, p. 16.  The gist of Plaintiffs argument appears to be that Fannie Mae interfered with their contractual right to a short sale.  Plaintiffs have not, however, identified any provision of the Note or Deed of Trust that would govern a short sale such that involvement in this process would constitute interference with the performance of duties under either contract.  In fact, BAC's April 2011 letter to Adeniran, which indicated that BAC was acting on behalf of Fannie Mae, listed sale of the property as an option that "may be available" to prevent foreclosure.  See Exhibit A-6 to Motion for Summary Judgment, Docket Entry No. 16-7 (emphasis added).  "[I]t is possible that the sale of your home can be approved through BAC Home Loans Servicing, LP even if your home is worth less than what is owed on it."  Id. at 2 (emphasis added).

[65]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, pp. 19–20 ¶¶ 91–95.

[66]Plaintiffs respond that defective notice is also a violation of the terms of the Deed of Trust and therefore a breach of contract.  Response to Motion for Summary Judgment, Docket Entry No. 18, p. 37 ¶ 75.  As discussed in section III.C above, this claim fails as a matter of law because Plaintiffs have shown no damages as a result of any alleged breach.

App.—San Antonio 1998, no pet.) ("Where the mortgagor's possession is undisturbed, he has suffered no damage."); see also Owens v. BAC Home Loans Servicing, L.P., No. H-11-2742, 2012 WL 1494231, at *3 (S.D. Tex. April 27, 2012) (collecting cases); Ayers v. Aurora Loan Servs., LLC, 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011) ("[A]bsent a sale, Plaintiff cannot state a claim under these sections of the Property Code.").

Because there is no evidence in the record that a foreclosure sale ever took place, there is no harm to remedy, and Plaintiffs' claim fails as a matter of law.[67]

## G.   Violation of the Truth in Lending Act

Section 1641(g) of the Truth in Lending Act ("TILA") states that within 30 days of the sale, transfer, or assignment of a mortgage loan the new owner or assignee of the debt must notify the borrower of the transfer in writing. 15 U.S.C. § 1641(g).  TILA contains a safe harbor provision, however, for mortgage servicers who are assigned the debt "solely for the administrative convenience of the servicer in servicing the obligation." Section 1641(f).

Plaintiffs seek both actual and statutory damages under TILA. They allege that "[e]very defendant failed to provide any notice

---

[67]Plaintiffs' claim based on the allegation that three people were disclosed as substitute trustees and none signed the notice also fails to assert an actual violation of the Texas Property Code.  Brinson v. Univ. Am. Mortg. Co., No. G-13-463, 2014 WL 4354451, at *6-*7 (S.D. Tex. Sept. 2, 2014).

with the required information for every transfer of the note as described [in Plaintiffs' First Amended Complaint], including but not limited to the purported 2009 assignment of the note from MERS to Citimortgage."[68]   Neither MERS nor Citimortgage is a party to this action.   The court assumes—as Defendants appear to—that Plaintiffs mean the 2011 assignment from BANA to BAC.[69]

Defendants argue that the assignment from BANA to BAC falls within TILA's safe harbor provision because the transfer was made "so that the servicer could foreclose on [Plaintiffs'] property."[70] See Reed v. Chase Home Finance, LLC, 723 F.3d 1301, 1303 (11th Cir. 2013).   In Reed the Eleventh Circuit held that an assignment of a

---

[68]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, p. 18 ¶ 80.

[69]In their Response to Defendants' Motion for Summary Judgment, Plaintiffs clarify that they "are also complaining about the failure to disclose the change in ownership that resulted in Fannie Mae and the Trust having an interest in the Property." Response to Motion for Summary Judgment, Docket Entry No. 18, p. 33 ¶ 67.   This additional claim fails as a matter of law because Section 1641(g) was not in effect when Plaintiffs' loan was allegedly sold to Fannie Mae.   Section 1641(g) was enacted on May 20, 2009, as part of the Helping Families Save Their Homes Act of 2009, Pub. L. 111-22, § 404(a), 123 Stat. 1632, 1658.   Section 1641(g) applies only to transfers made on or after the date of its passage. Jemison, 2014 WL 2739351 at *10.   See also Craig v. Bank of New York Mellon Corp., No. 10-CV-4438, 2014 WL 1347225, at *10 (E.D.N.Y. March 31, 2014) (observing that "[t]he handful of district courts to have considered the issue appear to have uniformly held that § 1641(g) is not retroactive." Plaintiffs allege that their loan was sold to Fannie Mae in 2007, approximately two years before the passage of the act.   See First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No 14-1, pp. 7-8 ¶ 27.

[70]Motion for Summary Judgment, Docket Entry No. 16, p. 22 ¶ 35.

mortgage to a mortgage servicer was an "administrative convenience" within the meaning of § 1641(f) "because the Assignment allowed [the defendant] to perform foreclosure, a requirement of servicing the loan."   Id.   Plaintiffs argue that Reed is distinguishable because under California law, which governed that case, the mortgage servicer could not foreclose without first being assigned the mortgage.[71]   Here, plaintiffs argue, BANA could have just transferred possession of the endorsed note to BAC, without the necessity of recording an assignment of the Deed of Trust.[72]   The court does not construe "administrative convenience" as requiring that the transfer be the most convenient alternative.   Assignment of the Deed of Trust to BAC gave it the authority to foreclose. There is no indication in the record that the transfer was made for any other purpose.   The court concludes that BANA, as successor to BAC, is entitled to protection under TILA's safe harbor provision.

## H.   Other Declaratory and Injunctive Relief

Plaintiffs also seek declarations from the court regarding the validity of documents needed to exercise the power of sale and the rights of the parties generally.[73]   This request is intertwined with and dependent upon Plaintiffs' other claims, all of which will be

---

[71]Response to Motion for Summary Judgment, Docket Entry No. 18, pp. 33-34 ¶ 68.

[72]Id.

[73]First Amended Complaint, Exhibit A to First Motion for Leave to Amend, Docket Entry No. 14-1, p. 21.

dismissed.  See Davis v. Countrywide Home Loans, Inc., No. H-13-623, at *6 (S.D. Tex. March 3, 2014); see also Val-Com Acquisitions Trust v. CitiMortgage, Inc., 421 F. App'x 398, 400-01 (5th Cir. 2011) (explaining that "[o]nce the district court had dismissed the underlying [substantive] claims, there were no claims for which [it] could grant declaratory relief").

### IV.  Conclusions and Order

For the reasons explained in Section II above, Plaintiffs' First Motion for Leave to Amend (Docket Entry No. 14) is **GRANTED** and Plaintiffs' Second Motion for Leave to Amend (Docket Entry No. 23) is **DENIED**.

For the reasons explained in Section III above, the court concludes that Plaintiffs have failed to raise a genuine issue of material fact for trial with respect to any of their claims for relief.  The court therefore concludes that, even when drawing all reasonable inferences in favor of Plaintiffs, Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims.  Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 16) is **GRANTED**.

Lender Defendants' Objection to Plaintiffs' Evidence (Docket Entry No. 21) is **MOOT** since the court has not relied on the challenged evidence in reaching its decision.

**SIGNED** at Houston, Texas, this 30th day of September, 2014.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE